IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MICHELE BURKE CRADDOCK,<br><br>    Plaintiff,<br><br>v.<br><br>LECLAIRRYAN, A PROFESSIONAL CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 3:16-cv-11 |

### DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION

Defendant LeClairRyan, a Professional Corporation ("LeClairRyan") respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss and to Compel Arbitration.

### INTRODUCTION

None of the arguments made by plaintiff Michele Burke Craddock ("Ms. Craddock") compel, counsel, or even permit this Court to bypass the arbitration process agreed to by every Shareholder of LeClairRyan. Each of her arguments is but a variation on a single theme: that, while acting as a Shareholder, calling herself a Shareholder, and accepting very substantial compensation as a Shareholder, she failed actually to sign the required Shareholder Agreement. Both parties agree with this narrative. But Ms. Craddock's course of conduct after being made a Shareholder was itself acceptance of the Shareholder Agreement. The agreement, like every other contract in Virginia that does not require otherwise, is capable of acceptance by performance. It was. And it was only <u>after</u> she applied for and accepted promotion to

Shareholder, <u>after</u> she was granted an exception so she could be promoted to Shareholder a year early, <u>after</u> she asked for and was granted a deferral of her buy-in as a Shareholder, <u>after</u> she received her extraordinary $1.1 million bonus, <u>after</u> she purchased her Shares, <u>after</u> she voted as a Shareholder at the vast majority of Shareholder meetings, <u>after</u> she accepted Shareholder-only benefits, Shareholder-level compensation, Shareholder-status deferred compensation, and multiple Shareholder bonuses over multiple yearly cycles, <u>after</u> she hired a lawyer to press her claims about being discriminated against (in promotion and compensation!), <u>after</u> she asserted those claims in writing to the Firm, and <u>after</u> LeClairRyan's lawyers reminded her that Shareholders were required to proceed in arbitration – only <u>after</u> all of this, did Ms. Craddock for the first time articulate any objection to the arbitration provision by which all Shareholders are bound.

Simply put, Ms. Craddock should not be permitted to sidestep years of conduct evincing her acceptance and disavow the Shareholder Agreement when it is convenient for her. Based on Ms. Craddock's own words and actions, arbitration is compulsory, and LeClairRyan's motion should be granted.

## ARGUMENT

## MS. CRADDOCK IS REQUIRED TO SUBMIT HER CLAIMS TO ARBITRATION

### A. Standard of Review

The legal principles and the salient facts are not seriously in issue. The Federal Arbitration Act requires the enforcement of valid arbitration agreements. Craddock Opposition Memorandum ("Opp.") at p. 9. The question of whether the parties agreed to arbitrate is determined by application of state contract law. Opp. at p. 10, 11. When a court "is satisfied that the parties agreed to arbitrate," the dispute should be ordered into arbitration. *Lorenzo v. Prime Comm., L.P.*, 806 F.3d 777, 781 (4th Cir. 2015).

Ms. Craddock does misread the law, however, when she argues that she is entitled to a jury trial on the existence of the arbitration agreement. Instead, as the Fourth Circuit explained last year:

> The right to a jury trial under Section 4 of the FAA, however, is not automatic. Rather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists – and must also show sufficient facts in support. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *see also Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987).
>
> Not just any factual dispute will do. Rather, the party requesting a jury trial under Section 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law. This standard is akin to the burden on summary judgment. *See Oppenheimer*, 56 F.3d at 358 (comparing Fed. R. Civ. P. 56(c), (e) to the level of sufficient evidentiary facts needed for jury trial under 9 U.S.C. § 4). In other words, **to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate.**

*Chorley Enter., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (emphasis added). Ms. Craddock has not and can not meet that burden, a burden familiar to the parties and to the Court from evaluation of motions for summary judgment.

There is no dispute that a written agreement exists. There is no material dispute concerning Ms. Craddock's acceptance of Shareholder status, despite her (also undisputed) failure to sign the agreement. In any event, the actions which LeClairRyan avers constituted acceptance (and which the firm and Ms. Craddock both consistently treated as acceptance) are themselves not disputed.

There remains only the legal question of whether Ms. Craddock's consistent and unvarying course of conduct from 2011 through her promotion in 2012, her exercise of Shareholder status and rights, and acceptance of Shareholder compensation and benefits throughout 2013 and, indeed, until she resigned and redeemed her shares in 2015, somehow

"trumps" her *post hoc* litigation-driven and self-serving November 2014 "objection" to the arbitration provision of the agreement under which she had operated for two years.

If this were a summary judgment motion, the Court would grant it. Under Section 4 of the Federal Arbitration Act, applying the same standard, the Court should reject Ms. Craddock's request for a jury trial and order this case back into arbitration, where it was before she improvidently filed this action.[1]

### B. A Written Agreement to Arbitrate Exists

"A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Ms. Craddock admits that "the purported arbitration agreement relied on by LeClairRyan . . . is contained in the LeClairRyan Shareholders Agreement" and even quotes from the provision in her Opposition. *See* Opp. at pp. 3-4, ¶¶ 1-2. There is no dispute over the existence of an arbitration agreement contained in a written agreement.

### C. Ms. Craddock Was Not Required to Sign the Shareholder Agreement

#### 1. The FAA Does Not Require Signature

As Ms. Craddock appears to recognize in her Opposition, "[t]he FAA does not require an arbitration agreement be signed by the parties entering into the agreement." *Mitchell v. Sajed*, No. 3:13-cv-312, 2013 U.S. District LEXIS 102207, at * 11 (E.D. Va. Jul. 22, 2013); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005), *cert. denied* 547

---

[1] Ms. Craddock argues that the federal Declaratory Judgment Act is not a proper vehicle for LeClairRyan to initiate a determination of her substantive discrimination claims. This argument is not material to this motion, and the Court need not decide the issue; if the arbitral claim for declaratory judgment is faulty, the arbitrators can and will dismiss it. That issue is irrelevant to the question of whether Ms. Craddock is required to pursue her claims in arbitration.

U.S. 1128 (2006) (stating that "no signature is needed to satisfy the FAA's written agreement requirement"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (holding that "a party may be bound by an agreement to arbitrate even absent a signature. . . . [W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties"); *Goldberg v. C.B. Richard Ellis, Inc.*, No. 4:11cv02237-RBH, 2011 U.S. Dist. LEXIS 148901, at * 7 (D.S.C. Dec. 28, 2011) (noting that "the overwhelming weight of authority supports the view that a signature is not required to meet the FAA's written requirement").

        2.       **The Shareholder Agreement Does Not Require Signature as the Only Means of Acceptance**

Nothing in the Shareholder Agreement says the provision can only be accepted via signature. In making her argument to the contrary, Ms. Craddock quotes only a portion of the arbitration provision and ignores the actual language of the general agreement to arbitrate. In relevant part, the Shareholder Agreement states in the very first subsection entitled "General Agreement":

> [T]he Corporation and each Shareholder agree that any dispute or controversy arising out of, relating to, or in connection with such Shareholder's relationship with the Corporation, including this Agreement, or the interpretation, validity, construction, performance, breach, or termination thereof, shall be settled by binding arbitration unless otherwise required by law, to be held in Richmond, Virginia in accordance with the applicable rules then in effect of the American Arbitration Association. . . .

This section then goes on to describe how arbitrators are selected, how the decision of the arbitrators is to be reached and communicated, and how fees and expenses are to be allocated. However, contrary to Ms. Craddock's contention, the provision never indicates that the Shareholder Agreement must be signed by the Shareholder for the agreement to arbitrate.

Ms. Craddock's citation to the fourth subsection of the arbitration provision is unavailing. This subsection simply reiterates the Shareholder's understanding that all disputes are to be

submitted to binding arbitration and that he or she is waiving the right to a jury trial in connection with such disputes. There is nothing in the language of this provision (or any other) that indicates that signing the Shareholder Agreement is the <u>only</u> way to accept the offer, especially in the face of the actual agreement to arbitrate which contains no reference to signing the Shareholder Agreement.

Consequently, the offer could be accepted by Ms. Craddock in any reasonable way, including by conduct evidencing acceptance after receipt of the Shareholder Agreement. Here, the evidence of that conduct is clear, unequivocal, and not subject to material dispute.

This view garners further support from the very section of the Restatement (Second) of Contracts cited by Ms. Craddock in her Opposition. Section 60 of the Restatement makes abundantly clear that, "[i]f the offeror prescribes the *only* way in which his offer may be accepted, an acceptance in any other way is a counter-offer." Restatement (Second) of Contracts § 60, Comment a (1981). However, "[i]f an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded." Restatement (Second) of Contracts § 60 (1981). In fact, the Restatement recognizes that

> Insistence on a particular form of acceptance is unusual. Offers often make no express reference to the form of acceptance; sometimes ambiguous language is used. Language referring to a particular mode of acceptance is often intended and understood as suggestion rather than limitation; the suggested mode is then authorized, but **other modes are not precluded**.

Restatement (Second) of Contracts § 30, Comment b (1981) (emphasis added). Therefore, "[u]nless otherwise indicated by the language or the circumstances, an offer invites acceptance **in any manner and by any medium reasonable in the circumstances**." Restatement (Second) of Contracts § 30 (1981) (emphasis added). Use of the Shareholder title, acceptance of Shareholder

compensation, voting on Shareholder votes, and the like, certainly is a "medium reasonable under the circumstances" to show acceptance of the Shareholder Agreement.

The two cases relied upon by Ms. Craddock—*Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005) and *Mitchell v. Sajed*, No. 3:13-CV-312, 2013 U.S. Dist. LEXIS 102207 (E.D. Va. Jul. 22, 2013)—are inapposite. In both of these cases, the arbitration provisions at issue specified alternatives to signature, such as continuation of employment or use of the credit card, for accepting the agreement. While these cases may be useful as illustrations of how other entities have approached the signature issue, they do not change the conclusion in the current situation. The arbitration provision in the Shareholder Agreement did not require any one method of acceptance and, therefore, Ms. Craddock could, and unequivocally did, accept it "in any manner and by any medium reasonable in the circumstances." Restatement (Second) of Contracts § 30 (1981).

### D. Ms. Craddock, Through Her Conduct and Actions, Agreed to the Terms of the Shareholder Agreement

As LeClairRyan discussed at length in its opening Memorandum and as Ms. Craddock acknowledges in her Opposition, it is well-settled that Virginia law will find a contract only where there is "mutuality of assent – the meeting of the minds of the parties." *Lacey v. Cardwell*, 216 Va. 212, 223 (1975). There simply needs to be a proposal or offer by one party and acceptance by the other. *Id.* Ms. Craddock urges that "assent is determined by one's words and acts, and not from his or her 'unexpressed state of mind.'" *See* Opp. at p. 12 (citing *Wells v. Weston*, 229 Va. 72, 78 (1985)). While correct, the Virginia Supreme Court has further explained that:

> Both the offer and **acceptance may be by word, act or conduct** which evince the intention of the parties to contract, and that their minds have met may be shown

by direct evidence of an actual agreement, or **by indirect evidence of facts from which an agreement may be implied.**

*Lacey*, 216 Va. at 223 (emphasis added). Virginia courts routinely find valid contracts where the acceptance was demonstrated only by performance under a clear understanding of the terms in which each party were to be bound and performance or acceptance of offered benefits occurred. *See* Mem. at pp. 11-12 (citing cases finding offers accepted by performance).

There can be no genuine question concerning whether Ms. Craddock accepted the Shareholder Agreement by her conduct. As LeClairRyan set forth in its previously filed Memorandum—and, as to the facts whereof, Ms. Craddock raises no material issue—Ms. Craddock:

- Specifically requested, and was granted, earlier eligibility for Shareholder consideration, as discussed with COO Micheal Hern in September 2011;

- Expressly applied for her promotion to Shareholder status in October 2012;

- Received a copy of the Shareholder Agreement on December 12, 2012, in conjunction with her invitation to the Newly Promoted Shareholders Meeting;

- Accepted shares in LeClairRyan after her promotion;

- Used $100,000 from the proceeds of her million-dollar bonus to LeClairRyan in August 2013 to pay for her shares, after she requested and was granted an accommodation in which the firm deferred the time of payment;

- Received compensation and employee benefits in accordance with her status as a Shareholder, which were available to her only because she was a Shareholder;

- Cast votes on issues put forth by LeClairRyan to its Shareholders, and only to its Shareholders;

8

- Held herself out as and referred to herself as a Shareholder, including in submissions to this Court and the EEOC, and continues to identify herself as a former Shareholder of LeClairRyan;

- Tendered her notice of resignation in accordance with the requirements of the Shareholder Agreement; and

- Was specifically told by LeClairRyan that her shares would be redeemed in accordance with the provisions of the Shareholder Agreement.

*See* Mem. at pp. 4-9.

Ms. Craddock does not dispute her actions in her Opposition. Instead, Ms. Craddock argues that the Virginia Supreme Court has "rejected the main tenet of LeClairRyan's argument – that consent to a proposed contract containing an arbitration clause may be implied through silence and/or conduct." *See* Opp. at p. 18. This is a misreading of the law. In *Brooks & Co. Gen. Contractors, Inc. v. Randy Robinson Contracting, Inc.*, 257 Va. 240 (1999), the Supreme Court refused to find an enforceable agreement to arbitrate between the parties because the form contract was a modification of a pre-existing oral contract between the parties. As the Supreme Court explained,

> This case reduces itself, to the proposition that a valid and binding oral contract existed between the parties after Robinson said it stood by its October 1995 bid and Brooks said Robinson would be given the work, that **Brooks simply failed to show there was a meeting of the minds on the modifications** that later appeared in the AIA form contract, and that, without such a showing, it cannot be said that Robinson accepted the terms of the modified contract by performance. Hence, as Robinson maintains, the oral contract was the sole subsisting agreement between the parties, and it did not require arbitration in the event of a dispute.

*Id.* at 245 (emphasis added). In the other case relied on by Ms. Craddock, *Phillips v. Mazyck*, 273 Va. 630, 176-77 (2007), the Supreme Court was asked to determine whether an agreement to arbitrate, allegedly entered into after the automobile accident at issue had occurred, was

9

enforceable. The Supreme Court found no enforceable agreement to arbitrate because there was no evidence that the insurance company (the party asserting the arbitration requirement) had agreed to arbitration and that the silence and inaction of the plaintiff's counsel in response to a proposed revised arbitration agreement could not be deemed acceptance. *Id.* at 176-77.

The decisions in *Brooks* and *Phillips* have no application here. For all Shareholders, the ownership of shares in LeClairRyan is governed by the Shareholder Agreement. There was no pre-existing oral agreement between Ms. Craddock and LeClairRyan that the Shareholder Agreement sought to change (and if there were, the actions of Ms. Craddock would have constituted acceptance of such a modification in any event). The Shareholder Agreement was already in place between LeClairRyan and all of its other Shareholders at the time of Ms. Craddock's promotion. And, Ms. Craddock did not sit silently and idly by after LeClairRyan presented her with the Shareholder Agreement. To the contrary, she accepted shares in LeClairRyan, made the buy-in payment, and generally engaged, acted, and held herself out as a Shareholder.

Moreover, the multiple cases previously cited by LeClairRyan, which Ms. Craddock tries in vain to distinguish, are apposite and demonstrate her acceptance is effective here. *See Southern Elec. Serv., Inc. v. Cornerstone Detention Prods., Inc.,* No. 7:10cv00076, 2010 U.S. Dist. LEXIS 54313 (W.D. Va. June 3, 2010) (holding that "conduct during the course of the construction project reasonably created an inference of assent to the [contract], . . . and that SES's belated protestations to the contrary are insufficient to defeat the defendants' motion [to compel arbitration]"); *FirstLight Fed. Credit Union v. Loya,* No. 08-14-00282-CV, 2015 Tex. App. LEXIS 10393 (Tex. App. Oct. 7, 2015) (finding that agreement was valid where employee was notified of the agreement and continued employment, but failed to sign the agreement);

*Morton v. Ivey, McClellan, Gatton & Talcott, LLP*, No. 12 CVS 1298, 2013 NCBC LEXIS 20 (N.C. Super. Ct. Apr. 24, 2013) (enforcing an arbitration provision in an unsigned partnership agreement based upon the conduct of the parties).

All that is left is Ms. Craddock's inaccurate suggestion that, when she was first asked to sign the Shareholder Agreement in November 2014, she refused to do so, thereby rejecting the arbitration agreement. Ms. Craddock's argument is belied by her own statements in her Opposition. Ms. Craddock admits that, after the meeting held for newly promoted Shareholders in December 2012, she received an e-mail from Chris Lange reminding her to return her signed documents to him. According to Ms. Craddock, she responded by advising Mr. Lange that she had not signed the documents because she was in discussions with Micheal Hern about her buy-in payment. *See* Opp. at p. 4. Ultimately, however, Ms. Craddock admits that the buy-in issue that supposedly delayed her execution of the Shareholder Agreement was resolved when, with her "acknowledgment," LeClairRyan deducted the $100,000 payment from the $1,112,796.26 bonus paid to Ms. Craddock in August 2013. *See* Opp. at p. 5, ¶ 9. There was no hint or suggestion from Ms. Craddock that she refused the arbitration provision when she was first given the agreement to sign, or when she was reminded to sign the agreement, or at any time before she was actively adverse to the firm.

Plainly, Ms. Craddock asks this Court to invalidate the arbitration agreement because, at the last minute, she created self-serving e-mails and documents that "rejected" the arbitration agreement. However, Ms. Craddock misses the point. By November 2014, she had already <u>accepted</u> the Shareholder Agreement and the arbitration provision through her actions and course of conduct over the almost two years preceding her "refusal" to sign the Shareholder Agreement. Ms. Craddock sought and was elected to be a Shareholder, accepted the perks and benefits of

being a Shareholder, held herself out as a Shareholder, and conducted herself as a Shareholder throughout this period. Then, when being a Shareholder did not serve her purposes, she sought to disavow the Shareholder Agreement.

There is no real dispute: Ms. Craddock, through her actions and words, clearly and unequivocally expressed her acceptance of the Shareholder Agreement over a period of years.

## CONCLUSION

This case should not be in this Court. It should proceed in the previously initiated and pending arbitration before the American Arbitration Association. LeClairRyan respectfully urges this Court to grant its Motion and to compel Ms. Craddock to proceed with her claims in the existing AAA arbitration.

Respectfully submitted,

**LECLAIRRYAN, A PROFESSIONAL CORPORATION**

By: __/s/ Randy C. Sparks, Jr._____.

John M. Bredehoft (VSB No. 33602)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (888) 360-9092
Email: jmbredehoft@kaufcan.com

Randy C. Sparks, Jr. (VSB No. 40723)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, VA 23129
Telephone: (804) 771-5700
Facsimile: (888) 360-9092
E-mail: rcsparks@kaufcan.com

*Counsel for Defendant LeClairRyan, a Professional Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2016, a true copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND TO COMPEL ARBITRATION was electronically filed with the Clerk of Court, which will send a notification of such filing (NEF) to the following:

Harris D. Butler, III, Esquire
Paul M. Falabella, Esquire
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, VA 23219
*Counsel for Plaintiff*

        /s/ Randy C. Sparks, Jr.
Randy C. Sparks, Jr.
Virginia Bar No. 40723
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, Virginia 23219
Telephone: (804) 771-5700
Facsimile: (804) 771-5777
E-mail: rcsparks@kaufcan.com
*Counsel for LeClairRyan, a Professional Corporation*