IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MICHELE BURKE CRADDOCK,<br><br>    Plaintiff,<br><br>v.<br><br>LECLAIRRYAN, A PROFESSIONAL CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 3:16-cv-11 |

**LECLAIRRYAN'S MEMORANDUM IN SUPPORT OF MOTION TO CORRECT AND VACATE PORTION OF ARBITRATION AWARD AND IN OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD**

Defendant LeClairRyan, PLLC ("LeClairRyan") respectfully submits this Memorandum of Law (i) in support of its Motion to Correct and Vacate Portion of Arbitration Award, and (ii) in Opposition to the Motion to Confirm Arbitration Award previously filed by Plaintiff Michele Burke Craddock ("Craddock").

**SUMMARY AND BACKGROUND**

This Court cannot confirm the arbitration award as requested by Craddock. As Craddock admitted in the Notice filed with this Court subsequent to her original confirmation motion, the arbitration award as initially issued contained a number of arithmetical miscalculations and errors. Although the arbitration panel has since issued a revised arbitration award, many of the arithmetical mistakes from the original arbitration award remain in the revised award.

Compounding this problem and of somewhat larger legal and monetary significance, the arbitration panel's fee decision – increasing Craddock's attorney's fees award by 25% because of her "success" in this matter after first reducing the award by 20% for her *lack* of success --

constitutes "manifest disregard of the law" by the panel. That is a firmly-grounded basis for this Court to vacate the enhancement of Craddock's fees before confirming the award. Moreover, this "down and then up again" procedure is manifestly inconsistent with the legal requirements imposed by the panel's proper recognition that Craddock achieved only very limited success on her claims. The two-step process itself manifestly disregards the law that controls the panel's fee decision. Rather than reflexively confirming the award, the Court should exercise its responsibility under the Federal Arbitration Act to reign in the panel's manifest disregard of the law – not only to correct the panel's continuing mathematical errors, but also to vacate that portion of the award providing Craddock an enhancement of her fees based on the degree of her "success" in this case.

Craddock initiated her claims with an EEOC Charge of Discrimination, purportedly on behalf of a "class," asserting that essentially every woman who ever worked at LeClairRyan had been discriminated against for years. By the time she improvidently and improperly filed her claims in this Court, Craddock somewhat more modestly confined herself to a universal indictment of essentially every decision LeClairRyan ever made involving her during her dozen years with the firm – including gratuitous references to purported experiences of other female attorneys with the firm, apparently in the hope of garnering national media attention for her accusations. (In this, at least, she succeeded.)

However, the process ended up – after requiring the intervention of this Court and the Court of Appeals, made necessary by Craddock's decision to ignore the then-pending arbitration filed by the firm -- with the arbitration panel evaluating two weeks of live testimony and hundreds of documentary exhibits, and ruling in LeClairRyan's *favor* on almost every assertion Craddock pressed. Craddock *lost all* of her Equal Pay Act claims, the very type of claim that her

counsel argued to the panel made this case "unique" and "difficult."  Craddock *lost all* of her claims that the firm ever retaliated against her in any way, for any reason.  Craddock *lost all* of her constructive discharge claims, rejecting her assertions that the firm forced her to quit, and finding her departure voluntary and un-coerced.  Craddock *lost all* of her claims that she was discriminated against by a delayed promotion to Shareholder, that she was not given opportunities provided to male lawyers, that the firm's participation in referral networks discriminated against her, or that the firm had some sort of pervasive culture discriminating against women since the day she was hired.  In short, the panel found *against* Craddock and *in favor* of LeClairRyan on *every one* of her comprehensive indictments of the firm and its treatment of women – save for a *single* year of a multi-year claim relating to a *single* aspect of *one* Count of her allegations: that the firm should have given Craddock a raise under the firm's former compensation determination system (amounting to a doubling of her base salary) for calendar year 2014, based on her *unique* and personal experience of $20 million in origination credits having been transferred to her (by firm management) from a departing partner, arising out of a single extraordinary and likely-irreproducible result in one case (for which Craddock received a $1,112,796 bonus from the firm).

So be it; under the very limited review provisions of the Federal Arbitration Act, the firm will not ask this Court to gainsay the decision of the panel that Craddock's salary should have been doubled from 2013 to 2014 (although no other Shareholder's salary was ever doubled in one year, much less his or her first year as Shareholder – and disregarding the firm's provision of a million-dollar-plus bonus to Craddock in recognition of outstanding performance on that one case).  But the fact remains that Craddock pled four enumerated counts against LeClairRyan in this matter, each implicating multiple alleged actions by and claims against the firm, and each

3

usually implicating decisions and factors spreading over many years -- but she won only one aspect of one of those claims. An award to Craddock approaching $300,000 is, to be sure, not small potatoes. But in the context of this case – where she indicted almost all of the firm's actions towards her (and other women) for more than a decade, where she required the firm to showcase several of its *successful* female Shareholders, and where she examined the justification for detailed compensation data for scores of male and female partners for many years -- this is limited success at best. Indeed, it is almost *de minimis* success given the breadth and magnitude of the claims pled by Craddock.

As far as relief personal to Craddock is concerned, she achieved very little of what she sought. Her counterclaim in the arbitration (which was essentially identical to the Complaint she filed with this Court when she initially attempted to avoid arbitration), demanded:

- Front pay (for which the demand eventually exceeded five million dollars, doubled pursuant to the Equal Pay Act to over ten million dollars), which the panel rejected;

- Injunctive relief against LeClairRyan, which the panel rejected;

- Back pay for three years prior to her filing, which would have increased to four years by the hearing (*i.e.,* something in the area of perhaps a million dollars, doubled by the Equal Pay Act to two million dollars), for which the panel awarded only one year, not doubled, less than $300,000;

- Prejudgment interest and an award respecting lost employment benefits (she challenged aspects of the firm's retirement system) which the panel declined to award;

- General compensatory damages of "not less than $300,000 per Title VII count" (*i.e.*, a total of "not less than" $600,000), of which the panel awarded ***only 3.3%,*** or $20,000;

- Punitive damages of "not less than $300,000 per Title VII count" (*i.e.*, a total of not less than $600,000), which the panel declined to award;

- Equal Pay Act unspecified "actual" damages, "liquidated" damages, and other relief, which the panel did not award; and

- An offset for tax purposes, which the panel did not award.

While the total award is hardly insignificant in isolation, it is only about three percent of the money Craddock sought – if that -- and was accompanied by none of the broad injunctive or "other" relief demanded. By any objective standard, Craddock did ***not*** enjoy substantial success in the arbitration compared to what she sought, which is the black-letter-law standard for comparison. *Hensley v. Eckerhart,* 461 U.S. 424, 436-37, 439-40 (degree of success is the most critical factor in setting a fee award; relevant comparison is to what was sought: lower-than-lodestar fee is required where "the relief, however significant, is limited in comparison to the scope of the litigation as a whole"). *See McAfee v. Boczar,* 738 F.3d 81, 93 (4th Cir. 2014) (fee award must be based on "what she sought [compared] with what was awarded").

One may wonder whether this insubstantial degree of success, compared to what was sought, warranted a reduction in the lodestar fee amount of more than the twenty percent reduction the panel imposed.[1] But to say, as the panel did, that this insubstantial degree of

---

[1] A ten-percent reduction was conceded by Craddock. In essence, then, the panel reduced the lodestar fees in the arbitration proceeding itself only ten percent, if that, to take into account only limited success on her claims themselves. Were we in federal court, this would have been an abuse of discretion.

success warranted a twenty-five percent *enhancement* of the lodestar after a twenty percent reduction is manifestly to disregard the law on fee awards, the law on awards for only partial or minimal success, and the law on the extraordinarily rare practice of fee enhancement.[2]

**ARGUMENT**

I. **THE ARBITRATION AWARD STILL CONTAINS ERRORS REQUIRING CORRECTION BY THIS COURT.**

Pursuant to the Federal Arbitration Act, this Court "may make an order modifying or correcting the award upon the application of any party to the arbitration … [w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award …." 9 U.S.C. § 11(a).  The Wednesday after Craddock filed her original Monday Motion seeking confirmation of an arbitration award on October 1, 2018 [ECF Docket No. 21], she had to file a Notice with this Court advising that the arbitration award contained errors in its calculations.  [ECF Docket No. 23.]  On October 18, 2018, the arbitration panel issued a revised arbitration award (unopposed by the firm), ostensibly to correct the errors discovered in the original award.  Craddock submitted the revised award for confirmation by this Court on October 23, 2018.  However, even the revised award submitted to this Court by Craddock contains many of the same errors of calculation as the original award.

Specifically, the revised arbitration award contains the following mistakes and miscalculations:

---

[2] It may or may not be happenstance that the twenty percent reduction of the lodestar is exactly the same amount – to the *penny* – of the improper subsequent twenty-five percent enhancement, $135,630.30, resulting in substance and effect in *no* reduction at all for the pellucidly limited success enjoyed by Craddock.

- The arbitration panel calculated the applicable lodestar at the amount of $769,050.50 and determined that $90,899.00 should be deducted for proceedings initiated by Craddock in this Court before arbitration and on which she was unsuccessful. However, when the arbitration panel subtracted the $90,899.00 from the lodestar of $769,050.50, the panel came up with an amount of $678,899.50, not the correct amount of $678,151.50. Revised Final Award at pp. 43-44;

- The arbitration panel decided that Craddock's attorney's fee award should be reduced by 20% to account for her lack of success in the arbitration. The panel calculated the reduced fee amount as $543,099.60. This calculation is again wrong. A reduction of 20% of the correct adjusted amount of $678,151.50 amounts to a reduction of $135,630.30. Subtracting $135,630.30 from $678,151.50 results in an amount of $542,521.20. Revised Final Award at p. 44;

- The panel then decided that it would enhance Craddock's fee award by 25% "to reflect the degree of success Craddock achieved in this matter." Revised Final Award at p. 45. Twenty-five percent of $542,521.20 is $135,630.30 – which coincidentally is the *exact* same amount as the original 20% reduction for lack of success. The panel notes that it added $257,976.81 as the 25 percent enhancement, which, when added to the $543,099.60 incorrectly tabulated by the panel, somehow resulted in a total fee award of $701,076.41. Revised Final Award at p. 45; and

  - The panel then awarded Craddock a final fee award of $678,151.50. Revised Final Award at p. 46. Although the correct amount when the panel's

7

calculations are performed correctly, this amount is not mentioned anywhere in the panel's actual explanation of its attorney's fees award to Craddock. Revised Final Award at pp. 37-45.

Given the foregoing, the arbitration award submitted for confirmation by Craddock is riddled with evident miscalculations and mistakes. Not only do these errors preclude the Court from confirming the arbitration award as it stands, but this Court should correct the mistakes made by the panel.

## II. IN AWARDING CRADDOCK A 25% ENHANCEMENT OF ATTORNEY'S FEES, THE ARBITRATION PANEL MANIFESTLY DISREGARDED THE LAW, REQUIRING THIS COURT TO VACATE THAT PORTION OF THE ARBITRATION AWARD.

In addition to the grounds enumerated in Section 10 of the Federal Arbitration Act, a court may vacate an arbitration award where there is a "manifest disregard of the law" by the arbitrator. *Interactive Brokers LLC v. Saroop*, 279 F. Supp. 3d 699, 705 (E.D. Va. 2017) (Payne, J.). A manifest disregard of law occurs when the arbitrator clearly understands and states the applicable law, but proceeds to disregard it. *Dewan v. Walia*, 544 Fed. Appx. 240, 246 (4th Cir. 2013). As the Second Circuit has explained, "if the arbitrators simply ignore the applicable law, the literal application of a 'manifest disregard' standard should presumably compel vacation of the award." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972). Thus, while the manifest disregard of law standard is "not an invitation to review the merits of the underlying arbitration," the standard applies where: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Interactive Brokers*, 279 F. Supp. 3d at 705.

The enhancement of the lodestar represented a manifest disregard of the straightforward governing law.

Fee enhancements in employment cases are few and far between, and with good reason. The applicable law on the enhancement of attorney's fees awards is clear – so clear, in fact, that both Craddock and LeClairRyan cited the same cases to the arbitration panel when briefing this issue. An enhanced award may be permitted "in some cases of ***exceptional success***." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added). The Supreme Court has repeatedly indicated that an enhancement is proper "***only*** in certain '***rare***' and '***exceptional***' cases, supported by both 'specific evidence' on the record and ***detailed findings*** by" the tribunal.[3] *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (emphasis added) (quoting *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)).

The Supreme Court cautioned that "there are ***few*** such circumstances" and has enumerated the following "important rules" for assessing potential enhancements to the lodestar:

- Enhancements may be awarded only under rare and exceptional circumstances;

- Enhancements may ***not*** be awarded based on factors subsumed within the lodestar calculation, such as the novelty and complexity of the case or the quality of counsel's performance;

- The fee applicant bears the burden of proving that "an enhancement is necessary"; and

- The fee applicant must present specific evidence supporting an enhancement.

*Perdue v. Kenny A.*, 559 U.S. 542, 552-53 (2010). In each of these cases, the Supreme Court ***rejected*** the applicants' requests for enhancements, finding that the circumstances in those cases did not rise to the level of rare and exceptional circumstances justifying an enhancement of the

---

[3] The Court will note that the arbitration panel made no findings at all regarding the enhancement, other than those already considered by the factors relating to the calculation of the lodestar.

9

lodestar. *See Perdue*, 559 U.S. at 558-60; *Delaware Valley*, 478 U.S. at 566-68; *Blum*, 465 U.S. at 898-901. As the Supreme Court has explained, civil rights fee-shifting provisions "were not designed as a form of economic relief to improve the financial lot of attorneys," *Delaware Valley*, 476 U.S. at 565; thus, "unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim." *Perdue*, 559 U.S. at 559.

Here, the arbitrators granted an "incentive adjustment" to Craddock "to reflect the degree of success Craddock achieved in this matter." Revised Final Award at p. 45. As an initial matter, the arbitration panel's decision to provide an enhancement "to reflect [Craddock's] degree of success" is directly contrary to the panel's previous finding that "Craddock's limited success on the claims asserted and the damages awarded justify a reduction in claimed attorneys' fees." Revised Final Award at p. 44. In fact, the arbitration panel specifically held that:

> It is clear that Craddock was not successful in a number of respects. She pleaded claims of gender discrimination in violation of Title VII; gender discrimination in violation of the Equal Pay Act; retaliation in violation of Title VII; and retaliation in violation of the Equal Pay Act. The Panel awarded damages for gender discrimination with respect to her compensation at her law firm in 2014. Craddock sought both compensatory and punitive damages as well as last wages in an amount in excess of $4,000,000. The Panel awarded $274,748.00 in back pay for the year 2014 and compensatory damages of $20,000.

Revised Final Award at p. 44. Reaching such an illogical conclusion – that the lack of success merits a 20% reduction in fees while at the same time warranting a 25% enhancement of fees for exceptional success – shows the arbitration panel's manifest disregard of the applicable law.[4]

---

[4] *See, e.g., Taylor v. Republic Services, Inc.,* 2014 WL 325169 (E.D. Va. Jan. 29, 2014) (Lee, J.) (successful Title VII retaliation claim and unsuccessful hostile environment claim; attorney's fee award reduced by fifty percent; plaintiff recovered damages of back pay and front pay of approximately $1.8 million plus $50,000 compensatory damages); *Lilenthal v. City of Suffolk,* 322 F. Supp. 2d 667, 675 (E.D. Va. 2004) (degree of success is the most critical factor in setting fee award).

Given that the twenty percent reduction was precisely equal in dollar amount to the twenty-five percent enhancement, the panel manifestly disregarded *Hensley* and subsequent governing authority – here, there was no reduction in fees at all for Craddock's failure to obtain 95% or more of what she asked for.

Moreover, the panel's rationale for granting an enhancement clearly demonstrates its manifest disregard for the applicable law. In discussing the appropriate approach for determining Craddock's attorney's fee award, the arbitration panel specifically noted its reliance on the Supreme Court's decision in *Perdue*. Revised Final Award at pp. 38-40. Yet the Supreme Court in *Perdue* was explicit: fee enhancements should only be granted in rare circumstances and ***cannot*** be supported by the *Johnson* factors that are subsumed in the calculation of the lodestar. *Perdue*, 559 U.S. at 552-53. *See also, e.g., McAfee v. Boczar,* 738 F.3d 81 (4th Cir. 2014) (quoting with approval this Court's conclusion that "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation"); *Brina v. Tidewater Transp. Dist. Comm.,* 105 F. Supp. 2d 500 (E.D. Va. 2000) (Smith, J.) (in ADA case, skill and expertise of counsel, quality of representation, and results obtained are lodestar factors and "cannot serve as independent bases for increasing the basic fee award [by enhancement]").

Yet despite the *Perdue* standard, the panel specifically and explicitly based its decision to award an enhancement on the very *Johnson* factors which the Supreme Court held cannot justify an enhancement: "In its analysis, the Panel looks to the *Johnson* [lodestar] factors that relate to the skill required by the attorneys who prosecuted the case, their opportunity costs in pressing the

instant litigation, and the undesirability of this case within the legal community." Revised Final Award at p. 45.[5]

In other words, the panel did precisely the ***opposite*** of what the black-letter law requires, and implemented an impermissible double-dipping on the *Johnson* factors in manifest disregard of the governing decision in *Perdue*. *See Perdue*, 559 U.S. at 558-59 ("[W]e have never sustained an enhancement of a lodestar amount for performance …. [N]ovelty and complexity of a case generally may not be used as a ground for an enhancement ….").

This is independent of the anomalous and unique "down and up again" process fashioned by the panel. This portion of the arbitration award should be vacated based on the panel's manifest disregard of the governing black-letter law, and Craddock's attorney's fees award should be reduced by $135,630.30.

### III. BECAUSE THE ARBITRATION AWARD NEEDS TO BE CORRECTED AND SHOULD BE VACATED IN PART, THE AWARD CANNOT BE CONFIRMED

The Federal Arbitration Act provides that, when a party has properly applied to the court to confirm an arbitration award, "the court must grant such an order <u>unless the award is vacated, modified, or corrected</u> …." 9 U.S.C. § 9 (emphasis added). For the reasons discussed above, the arbitration award entered in this matter must be corrected to fix the numerous miscalculations and errors contained in the panel's rationale for its award and should be vacated in part because of the panel's manifest disregard of law. Therefore, Craddock's pending motion to confirm the arbitration award must be denied in accordance with the provisions of the FAA.

---

[5] *See also Easley v. Anheuser-Busch, Inc.*, 758 F.2d 251 (8th Cir. 1985) (enhancement may not be based on factors considered in lodestar.) Under *Johnson*, any novelty of Craddock's claims cannot be the basis for enhancement. Similarly, such lodestar factors as the difficulty of the case, or its desirability or undesirability, are immaterial to any analysis of enhancement.

## CONCLUSION

The law is clear – this Court cannot confirm the arbitration award. Not only does the award contain numerous miscalculations and errors, but the arbitration panel's decision to give Craddock a 25% enhancement of her attorney's fees constitutes a plain and undeniable manifest disregard of governing black-letter law. The arbitration panel knew and cited the applicable case law, but expressly ignored it when giving Craddock an additional $135,000 in fees in recognition of the "success. " Instead of confirming the award, the Court should correct the award and vacate the portion of the award providing the impermissible enhancement.

Respectfully submitted,

**LECLAIRRYAN, PLLC**

By: __/s/ Randy C. Sparks, Jr.__

John M. Bredehoft (VSB No. 33602)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (888) 360-9092
Email: jmbredehoft@kaufcan.com

Randy C. Sparks, Jr. (VSB No. 40723)
KAUFMAN & CANOLES, P.C.
Two James Center
1021 East Cary Street, Suite 1400
Richmond, VA 23129
Telephone: (804) 771-5700
Facsimile: (888) 360-9092
E-mail: rcsparks@kaufcan.com

*Counsel for LeClairRyan, PLLC*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 6th day of November, 2018, a true copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO CORRECT AND VACATE PORTION OF ARBITRATION AWARD AND IN OPPOSITION TO PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD was electronically filed with the Clerk of Court, which will send a notification of such filing (NEF) to the following:

  Harris D. Butler, III, Esquire
  Paul M. Falabella, Esquire
  BUTLER ROYALS, PLC
  140 Virginia Street, Suite 302
  Richmond, VA 23219
  *Counsel for Michele Burke Craddock*

              /s/ Randy C. Sparks, Jr.
              Randy C. Sparks, Jr.
              Virginia Bar No. 40723
              *Counsel for LeClairRyan, PLLC*
              KAUFMAN & CANOLES, P.C.
              Two James Center
              1021 East Cary Street, Suite 1400
              Richmond, Virginia 23219
              Telephone: (804) 771-5700
              Facsimile: (804) 771-5777
              E-mail: rcsparks@kaufcan.com

16870666v3