# EXHIBIT 1

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL
Case No. 01-15-0005-9561

LECLAIR RYAN, P.C.

    Claimant,

    v.

MICHELE BURKE CRADDOCK,

    Respondent

<u>FINAL AWARD</u>

1.    <u>The parties are represented by:</u>

    Burt H. Whitt, Esq.
    Kaufman & Canoles, PC
    150 West Main Street, Suite 2100
    Norfolk, Va. 23514-3037
    bhwhitt@kaufcan.com
    Tel: (804) 648-4848
    Fax: (804) 237-0413

    John M. Bredehoft, Esq.
    Kaufman & Canoles
    150 West Main Street, Suite 2100
    Norfolk, Va. 23514-3037
    jmbredehoft@kaufcan.com
    Tel: (804) 648-4848
    Fax: (804) 237-0413

    Randy C. Sparks, Jr, Esq.
    Kaufman & Canoles, Pc
    1021 East Cary Street, Suite 1400
    Richmond, Va. 2321 9
    rcsparks@kaufcan.com
    Tel: (804) 648-4848
    Fax: (804) 237-0413

    *Counsel for Claimant*

Harris D. Butler, Esq.
Butler Royals, PLC
140 Virginia Street, Suite 302
Richmond, Va. 23219
harris.butler@butlerroyals.com
Tel: (804) 648-4848
Fax: (804) 237-0413

Paul M. Falabella, Esq.
Butler Royals, PLC
140 Virginia Street, Suite 302
Richmond, Va. 23219
p.falabella@butlerroyals.com
Tel: (804) 648-4848
Fax: (804) 237-0413

*Counsel for Respondent*

2.     **The parties appointed as Arbitrators:**

Linda R. Singer, Esq.
JAMS Resolution Center
1155 F Street, NW, Suite 1150
Washington, D.C. 20004
lsinger@jamsadr.com
Tel. (202) 942- 9180
Fax. (202) 942- 9186

Hon. Jerome Friedman (ret.)
One Colley Avenue, Apt. 1602
Norfolk, Va. 23510
sanderry68@cox.net
(757) 627-7111

Hon. F. Bradford Stillman (ret.)
340 College Place
Norfolk, VA 23510
fbstillman@mac.com
(Substituted for Arbitrator Friedman on December 29, 2017.

Hon. Rosemarie Annunziata (ret.)
JAMS Resolution Center
1155 F Street, NW, Suite 1150
Washington, D.C. 20004
rannunziata@jamsadr.com
Tel. (202) 942-9180
Fax. (202) 942-9186

3.    **Governing Law and Rules**

The Arbitration process is governed by both the Federal Arbitration Act and the Virginia

Arbitration Act, to the extent that the Virginia statute does not conflict with the federal statute, and

by the American Arbitration Association's National Rules for the Resolution of Employment

Disputes, as amended and in effect November 1, 2009, Virginia state and federal substantive law

govern the merits of the Virginia and federal claims and defenses, respectively.

4.    **Pleadings**

The matter before this Tribunal was initiated by a Demand for Arbitration filed by

Claimant, LeClair Ryan, P.C. ("The Firm," "LR,") on December 11, 2015.  In its Demand,

Claimant sought a Declaratory Judgment seeking that the Panel declare that the provisions of Title

VII to the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e,

*et seq.* including the   Lilly Ledbetter Fair Pay Act of 2009) and the Equal Pay Act of 1963, 29

U.S.C. § 209(d), ct seq ("EPA"), as well as the retaliation claim,  are not applicable to Respondent

Michele Burke Craddock ("Craddock") and that it is not liable for the relief Respondent sought in

her claims for relief pursuant to the claims she made  in her gender-based Equal Employment

Opportunity Commission and retaliation class charge. When a 'right to sue' notice was issued by

EEOC, the Firm asserted its claims in arbitration. Craddock filed gender discrimination claims in

federal district court, which litigation was stayed by decision of the Fourth Circuit Court of

Appeals pending arbitration.

3

Respondent's Answer and Counterclaim were filed on June 2, 2017. Craddock's Counterclaim alleges a long-standing pattern of favoritism to male attorneys in compensation and promotion, perpetuated by the same, small, centralized group of male decision-makers (Counterclaim at ¶¶ 1-3, 8-11); male dominated leadership of the Firm; (Counterclaim at ¶¶ 12-16); disparate gender based treatment and disparate impact of compensation and promotion decisions, reflected in comparative times for elevation to shareholder status and compensation, primarily through discretionary awards of "origination credits," but including internal referral practices (Counterclaim at ¶¶ 17-22, 23, 26-32); and retaliation [Counterclaim at ¶¶86-102]. Craddock's pay disparity claims are brought both under the EPA and Title VII.

Claimant further disputed the arbitrability of any claims or defenses raised in this matter and raised the related question regarding the party responsible for the fees incurred in the arbitration.

5.   **Relevant Procedural History**

- Pursuant to Order No.1, the Tribunal conducted a Preliminary Conference with counsel for the parties by telephone on April 21, 2017 for the purpose of establishing appropriate procedures and schedules for the Arbitration.

- Pursuant to Order No. 2, entered on May 24, 2017, the Tribunal found Respondent bound by the Arbitration provision in the Shareholders Agreements, on the ground that Respondent was foreclosed from relitigating the issue in the arbitral forum, having sought judicial resolution of the issue in the United States District Court for the Eastern District of Virginia (Richmond Division) and the United States Court of Appeals for the Fourth Circuit District of Virginia (Richmond Division), both of which ruled in favor of Claimant.[1] Accordingly, no further consideration of the issue by the Tribunal was undertaken. Further, pursuant to AAA Administrative Rules and Rule 48 of the Employment Rules, the Tribunal determined that LeClair Ryan will be assessed the costs incurred in the arbitration proceedings, including the arbitrators' fees, on the ground that the parties' agreement, was an "employer-promulgated plan" and not one individually negotiated.

---

[1] On April 22, 2016, the District Court denied Respondent's Motion to Stay Arbitration and granted Claimant's Motion to Dismiss and to Compel Arbitration. The Court of Appeals dismissed the appeal on August 26, 2016 for lack of jurisdiction pursuant to 9 U.S.C §16 (b) (1) (2) (2012).

- Order No. 3, entered on May 30, 2017, set the conduct of discovery pursuant to an agreed Discovery plan, in which the Tribunal concurred, and scheduled the Arbitration Hearing to be held between October 23, 2017 and October 27, 2017 at the law offices of Kaufman and Canoles, PC, Two James Center, Suite 1400, Richmond Virginia, 23219. It also set the dates when each party's list of witnesses and exhibits, together with the party's objections to the admission of the opposing party's proposed exhibits or witnesses, were to be filed.

- Order No. 4, entered on June 15, 2017, denied Counterclaimant -Respondents' Request for Leave to File a Potentially Dispositive Motion pursuant to Rule 27 of the American Arbitration on the ground that the pleadings required determinations of fact and the motion was unlikely to dispose of or narrow the issues.

- Order No. 5, entered on July 3, 2017, further addressed the conduct of discovery in the proceedings, in particular the issue of what constituted relevant "comparables."

- Order No. 6, denied of Respondents' Motion for Dispositive Relief in the Nature of a Summary Judgment under Fed. R. Civ. P. 56 and pursuant of Rule 37 of the AAA on the ground the issues raised by the parties require a determination of fact and such a motion was unlikely to dispose of or narrow the issues.

- Order No. 7, dated September 11, 2017, resolved a discovery dispute raised jointly by the parties regarding a claim of privilege.

- Order No 8 resolved the number of depositions permitted under Order No. 5, which linked the number of permitted depositions to whether they were "party" or "non-party."

- Order No. 9 resolved the permitted discovery time period and scope (such as gender, geographic locations, professional status and professional histories of Respondents' employees or shareholders.)

- Order No. 10 clarified the permitted discovery time period and scope as set forth in Order No. 9.

- Order No. 11 granted Claimant's Motion to Compel responses to Respondent's Interrogatory No. 7 and Document Request No. 5.

- Order No. 12 granted the parties' joint request to reschedule the Arbitration hearing form October 23, 2018 to an available time and date as would permit nine or ten consecutive days for hearing, setting the hearing to begin on January 15, 2018, and continuing through January 26, 2018, at the law offices of Kaufman & Canoles, PC, Two James Center 1021 Cary Street, Suite 1400, Richmond, Virginia 23219. The Panel also directed that Respondent's case be presented first, because she had the burden of proof on her claims of gender discrimination, promotion, constructive discharge, and unequal pay

6.      **The Evidentiary Hearing**

The Arbitration Hearing was conducted on January 15, 2018 through January 25, 2018 at

the law offices of Kaufman & Canoles, PC, Two James Center, 1021 Cary Street, Suite 1400,

Richmond, Virginia 23219 with Harris D. Butler, Esq., and Paul M. Falabella, counsel for

Respondent, and John M. Bredehoft, Esq. and Randy C. Sparks, Esq, counsel for Claimant present.

Michelle Burke Craddock, Lori Thompson, Esq., the firm's General Counsel, and Stacy Beaulie,

were also present.

The Claimant submitted in evidence 133 exhibits and # demonstrative exhibits.

Respondent submitted in evidence 134 exhibits and # demonstrative exhibits.

The following witnesses testified:

- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 
- 

6



- 
- 
- 
- 
- 
- 

Before the submission of the evidence was closed, the Tribunal determined if either party sought to introduce additional material evidence. There being no additional material evidence proffered for admission by either party, the arbitration hearing was closed, with the exception of the submission of evidence establishing the attorney's fees and costs sought by Respondent were Respondent to prevail and the submission of post-hearing briefs, which were filed on April 2, 2018.

## DECISION

THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the Arbitration Agreement contained in LeClair Ryan's Second and Third Amended and Restated Shareholders Agreements and having examined the submissions, proof and allegations of the parties, find, conclude and issue this Award as follows.



Case 3:16-cv-00011-REP   Document 22-1   Filed 10/01/18   Page 9 of 46 PageID# 245





9



































Case 3:16-cv-00011-REP   Document 22-1   Filed 10/01/18   Page 28 of 46 PageID# 264





















## V.  FEES, COSTS, AND INTEREST

The parties have filed, and the Panel has considered, Michelle Burk Craddock's Brief In Support Of an Award of Attorney's Fees And Costs; LeClairRyan's Opposition To Craddock's Request For Award Of Attorney's Fees And Costs; and Michelle Burke Craddock's Reply Brief In Support Of An Award Of Attorney's Fees And Costs. The Panel also considered the exhibits, including time sheets, declarations, and attachments to these pleadings.

Asserting that she is the "prevailing party" in this matter, Craddock grounds her claim on the provisions of 42 U.S.C. Section 2000e-5(k): "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs .... Craddock also claims that she is entitled to interest at a rate of six percent pursuant to Virginia Code Section 6.2-302. Craddock finds support for this rate in case law: *Brown v. Mountainview Cutters, LLC*, 222 F. Supp. 3d 504, 511 (W.D. Va. 2016; *and Reed v. Dep't of Corrections*, 2014 U.S. Dist. LEXIS 157822*9 (W.D. Va. Nov. 7, 2014). LeClair does not challenge Craddock's claim that this Panel may exercise its discretion to award the Virginia statutory rate of interest.

36

## A.  The Standard To Be Applied To Determine The Award Of Attorneys' Fees

The U.S. Supreme Court has held that an award of attorneys' fees and costs shall be determined using a "lodestar" analysis. The lodestar amount representing the proper attorneys' fee award made pursuant to statute is the product of the reasonable number of hours expended times the reasonable attorneys' hourly rates. *Perdue v. Kenny*, 559 U.S. 542, 130 S.Ct. 1662 (2010). In *Perdue*, the Supreme Court adopted the so called "lodestar method," or "lodestar approach," for determining an award of legal fees in cases involving fee-shifting statutes, counseling that it "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 550-552, 130 S.Ct. at 1671-72 (*italics in original*).

In a fee-shifting context, the lodestar method requires an analysis of both the number of hours spent by an attorney in representing a client as well as the hourly rate charged for each hour of time. It is determined by multiplying the hourly rate by the number of hours, after it has been determined that the hourly rate and the number of hours spent are reasonable. *Blum v. Stenson*, 456 U.S. 886, 897, 104 S.Ct. 1541 (1984).

Until *Perdue* was decided, many courts applied twelve factors to evaluate the reasonableness of awards of attorneys' fees. *Johnson v. Georgia Highway Express Inc.*, 488 F2d 714 (5th Cir. 1974). The Fourth Circuit was among them. *See Barber v. Kimbrell's Inc.*, 577 F.2[nd] 216 (4th Cir. 1978).  The *Johnson* factors include the following: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation: (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the

37

results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Barber*, 577 F.2nd at 226, n. 28.

In *Perdue*, the Supreme Court seemed to undermine the use of the so-called *Johnson* factors, as they were applied by the courts to determine the reasonableness of awards of legal fees in fee-shifting cases. The Court asserted that the *Johnson* factors "gave very little guidance to district courts" in awarding legal fees, "placed unlimited discretion in trial judges," and "produced disparate results." *Perdue*, 559 U.S. at 550-52, 130 S.Ct. at 1671-72. The Court went on to state its intention to seek to "cabin" the discretion of the district courts that often followed upon the application of the "sometimes subjective" *Johnson* factors, by embracing the "lodestar approach," used by the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 478 F. 2nd 161 (1973), appeal after remand, 540 F.2d 102 (1976). The Court noted that the "lodestar approach" achieved dominance after it decided *Hensley Gisbrecht v. Barnhard*, 535 U.S. 789. 801, 122 S.Ct. 1817 (2002). *Id.* at 559 U.S. 550-52, 130 S.Ct. at 1671-72. As the Court put it in *Perdue*, since *Gisbrecht*, the lodestar has become "the guiding light of our fee-shifting jurisprudence." *Id.* at 559 U.S. 550-52, 130 S.Ct. at 1671-72. When it adopted the lodestar approach, the Court announced a strong presumption that the lodestar figure is reasonable in fee shifting jurisprudence, but it went on to state that the presumption may be overcome in rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. *Id.* at 559 U.S. 554, 130 S.Ct. at 1673.

The 4th Circuit follows the "lodestar approach," while continuing to apply the *Johnson* factors to determinations regarding the reasonableness of the hourly rates claimed and the number

38

of hours spent by attorneys in cases involving fee-shifting inquiries. *McAfee v. Boczar*, 738 F.3d

81 (4th Cir. 2013), as amended (Jan. 23, 2014). The *McAfee* court has identified the basis for a

proper calculation of an attorney's fee as a three-step process:

> "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.' *Robinson v. Equifax Info. Servs., LC*, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set for the in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) Id. at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee v. Boczar*, 738 F.3d at 88.

With the foregoing analysis in mind, we conclude that the "lodestar approach," announced

in *Perdue v. Kenny*, 559 U.S. 542, 130 S.Ct. 1662 (2010), must be applied in a manner consistent

with the three-step process set out in *McAfee*, 738 F.3d at 81. This conclusion necessarily requires

consideration of the *Johnson* factors in order to determine the "lodestar." Guided by these

precedents, the inquiry that follows is calculated to lead to a proper award of attorneys' fees and

costs.

## B.   The Lodestar Analysis

Craddock's legal team in this matter included the following time keepers, with hourly rates

times number of hours spent included: Harris D. Butler III ($500.00 per hour times 1,055 hours

for a fee total of $527,000.00); Paul M. Falabella ($315.00 per hour times 529.40 hours for a fee

total of $166,761.00); Paralegals ($135.00 per hour times 280.70 hours for a fee total of

$37,894.50); and Law Clerks ($100.00 per hour times 208 hours for a fee total of $20,800.00).

Litigation costs total $56,846.63. In addition, in her Brief In Support, Craddock's legal team

anticipated that additional legal fees and costs related to the preparation and filing of her Reply

would amount to $15,995.00 and $180.00 respectively.

Craddock contends that the sums of $753,055.50, plus $15,995.00, for a total of $769,050.50, represent the lodestar amount to which she is entitled. However, Craddock proposes a voluntary 10% reduction of this amount, which reduces her claim by $76,905.05, or to $692,145.45.

Craddock goes on to claim that she is entitled to an enhancement of 25% of the lodestar amount, or $173,036.00. Applying the percentage enhancement to the claimed lodestar amount, Craddock reaches her final amount of attorneys' fees claimed: $865,181.00.

Craddock's costs are $56,846.63, plus $180.00, for a total of $57,026. Craddock reduces her claim for costs by $6,089.50, the amount of costs associated with her legal ethics expert. Thus, her final claim for costs amounts to $50,937.13.

LeClair does not seriously contest the reasonableness of the hourly rates of the attorneys, legal assistants, and law clerks who represented Craddock. Nor does LeClair dispute the staffing decisions made by Craddock's attorneys, including the number of time keepers (attorneys, legal assistants, and law clerks), and the number of hours spent by each time keeper who logged billable hours while working on this matter.

Craddock has also offered, for the Panel's consideration, the Declaration of her attorney, Harris D. Butler III, as well as the Declarations of attorneys David E. Nagle, Carla D. Brown, and Thomas M. Lucas. These declarants support a finding that the hourly rates of Craddock's attorneys, legal assistants, and law clerks are reasonable, that the number of hours spent by these time keepers is reasonable, and that the staffing of Craddock's legal team, that is, the number of time keepers, is reasonable. Craddock also offers that her legal team made contemporaneous time entries and took care not to record time that was deemed excessive at the time of entry. Craddock's attorneys

have provided excellent documentation in the form of time sheets that identify each timekeeper, his or her hourly rate, the task performed for each time entry, and the time spent on each task.

LeClair has not provided declarations in response to the declarations offered by Craddock. Thus, the unrebutted declarations offered by Craddock demonstrate the following Johnson factors have been satisfied: her attorneys have substantial experience, enjoy excellent reputations within the legal community, and are possessed of exceptional ability; the time and labor expended by them are appropriate and reasonable; and they have the skill required to properly perform the legal services they have rendered.

Accordingly, the lodestar analysis leads to the conclusion that Craddock is entitled to an award of attorneys' fees in the amount of $769,050.50 (without application of her proposed 10% deduction).

### C.  Consideration of Unsuccessful Claim

Next, we turn to the subtraction of fees spent on unsuccessful claims unrelated to successful ones. At the outset, certain claims have been identified which should be deducted for lack of success. These include two matters that Craddock prosecuted in federal court before the Panel was appointed: first, her efforts to preserve the testimony of Marion J. Colgate by taking his pre-suit deposition; and second, her attempt to defeat the arbitration clause in the partnership agreement after filing suit in the U.S. District Court for the Eastern District of Virginia.

These two matters are outside the scope of the matters to which this Panel's attention was directed by the partnership's arbitration clause. Also, Marion J. Colgate's deposition proved to be unnecessary to Craddock's case because she was able to use the testimony of his son, Curtis Colgate, at the arbitration hearing. Finally, Craddock was unsuccessful, both in her efforts to obtain

a court order permitting her to take the proposed deposition as well as in her attempt to prosecute the claims, ultimately decided here, in the district court.

Accordingly, after applying the applicable *Johnson* factors, especially the results obtained, the Panel deducts from the lodestar amount the sum of $3,875.00 in fees and $65.22 in costs, all incurred in connection with Craddock's unsuccessful effort to perpetuate the testimony of Mr. Colgate; and the Panel also deducts from the lodestar amount the sum of $87,024.00 in fees and $2,379.27 in costs, all incurred in connection with Craddock's attempt to defeat the arbitration clause that ultimately led to proceedings before this Panel.

At this point in our analysis, we find that Craddock's attorneys' fees claim, without recognizing her voluntary 10% reduction and her requested enhancement, amounts to $769,050. After deducting the attorneys' fees spent in her pursuit of the Marion Colgate deposition as well as the attorneys' fees spent in her effort to have this dispute determined in the district court, her attorneys' fees claim comes to $678,899.50 ($769,050.50 minus $90,899.00). Also, accepting Craddock's offer to deduct that portion of her claim for costs related to her legal ethics expert ($6,089.50), we observe that her claim for costs amounts to $50,937.13. Deducting those costs associated with both the Colgate deposition and federal court proceedings, her costs come to $48,492.64 ($50,937.13 minus $2,444.49).

At this point in our analysis, we apply two *Johnson* factors: the amount in controversy and the results obtained; and the novelty and difficulty of the questions raised. These factors bear on the claims pleaded by Craddock and the damages awarded on those claims.

It is clear that Craddock was not successful in a number of respects. She pleaded claims of gender discrimination in violation of Title VII; gender discrimination in violation of the Equal Pay Act; retaliation in violation of Title VII; and retaliation in violation of the Equal Pay Act. The

Panel awarded damages for gender discrimination with respect to her compensation at her law firm in 2014. Craddock sought both compensatory and punitive damages as well as last wages in an amount in excess of $4,000,000. The Panel awarded $274,748.00 in back pay for the year 2014 and compensatory damages of $20,000.

Craddock's limited success on the claims asserted and the damages awarded justify a reduction in claimed attorneys' fees. However, this reduction must be tempered by the novelty of case, which involved her challenge to entrenched gender-based discrimination in the compensation practices of a well-known and long-established law firm. Accordingly, the Panel concludes that a reduction in attorneys' fees of 20% lack of success is appropriate. Applying this factor to the lodestar amount adjusted above, the amount of attorneys' fees is $543,099.60 ($678,899.50 minus 135,779.90).

### D.  Incentive Adjustment

Finally, the Panel considers awarding some percentage of the above calculated amount ($543,099.60) to reflect the degree of success Craddock achieved in this matter. In its analysis, the Panel looks to the *Johnson* factors that relate to the skill required of the attorneys who prosecuted this case, their opportunity costs in pressing the instant litigation, and the undesirability of this case within the legal community. Craddock chose to prosecute gender discrimination claims against the law firm where she was a female partner. Her case was unique, presenting difficult challenges. A favorable outcome was not at all certain. Craddock's success depended on securing highly skilled and experienced counsel who were willing to forgo other opportunities in order to represent her. A case involving gender-based discrimination claims against a highly competent law firm is clearly an undesirable undertaking within the legal community.

43

The fee shifting provisions to which Craddock resorted in this case are intended to encourage counsel to accept cases that advance the public policy that underscores the remedial purpose of the federal statutory scheme. It is appropriate to reward counsel in such a case not only for the risk undertaken, but also to encourage other attorneys to take on like cases.

The Panel finds, after due consideration, that the appropriate degree of success percentage to award here is 25%. Thus, the final award of attorneys' fees in this matter is $701,076.41 ($543,099.60 plus $257,976.81). The Panel also awards the sum of $48,492.64 in costs.

Taking into account the Interim Award previously published in this matter and, in consideration of the foregoing analysis, our Final Award is as follows:

1). Damages in the sum of $274,748.00, representing an award of back pay, and compensatory damages in the sum of $20,000, plus interest on these sums compounded at a rate of 6% from January 1, 2015.

2. Attorneys' fees in the sum of $701,076.41, and costs in the sum of $48,492.64, with interest at a rate of 6% from the date of this award.

DATE: September 24, 2018

Hon. Rosemarie Annunziata (ret.)
Chair

Linda R. Singer, Esq.

Hon. F. Bradford Stillman (ret.)

44

## PROOF OF SERVICE BY E-Mail

Re: LeClairRyan, A Professional Corporation vs. Craddock, Michele Burke (AAA)
Reference No. 1410007364

I, Erika Holland, not a party to the within action, hereby declare that on September 26, 2018, I served the attached Final Award on the parties in the within action by electronic mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

Ms. Tanisha Mitchell
American Arbitration Association
2200 Century Parkway
Suite 300
Atlanta, GA   30345-3203
Phone: 404-325-0101
tanishamitchell@adr.org

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington, DISTRICT OF COLUMBIA on September 26, 2018.

Erika Holland
JAMS
EHolland@jamsadr.com